MOORE GROCERY CO. v. McCAN et al.
(No. 6695.)

(Court of Civil Appeals of Texas. Galveston. June 26, 1914.)

PARTNERSHIP (§ 181*)—DEBTS—EXCLUSION OF FIRM CREDITORS.

A partner in a firm which owed plaintiff a balance for goods sold, and which turned over its stock of goods, accounts, etc., to plaintiff. to be applied generally to the payment of its debts, had no right to direct, nor had plaintiff the right to make the application of his half interest in the firm to the payment of his individual debt, to the exclusion of the firm's creditors.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 310, 316, 317; Dec. Dig. § 181.*]

Appeal from Leon County Court; L. T. Dashiell, Judge.

Action by the Moore Grocery Company against J. L. McCan, John A. Marshall, and R. H. Sammon, with cross-actions by Marshall and Sammon. Judgment for defendants Marshall and Sammon denying any recovery to plaintiff, and plaintiff appeals. Reversed and remanded.

Price & Beaird, of Tyler, and Joe H. Seale, of Centerville, for appellant.

McMEANS, J. The Moore Grocery Company, a corporation, brought this suit against J. L. McCan, John A. Marshall, and R. H. Sammon to recover $455.66, upon a verified account for goods, wares, and merchandise sold by plaintiff to defendants. Plaintiffs obtained a judgment in this suit against defendant McCan in the county court of Smith county before the venue was changed to the county court of Leon county.

Defendants Marshall and Sammon filed their answers, denying under oath that the account sued on was just and true or that all just and lawful payments and credits had been allowed, and defendant Marshall by cross-action alleged that during the time that he was a member of the firm of J. L. McCan & Co. the said firm paid plaintiff $280.-02 in excess of the indebtedness to it, one-half of which he was entitled to reimbursement from plaintiff, and he prayed for judgment for $140.01.

The defendant Sammon also filed a cross-action, in which he alleged that he purchased the interest of his codefendant, Marshall, in the mercantile business of J. L. McCan & Co. on March 12, 1912, and that during the time he was a member of said firm there was purchased from plaintiff goods to the amount of $108.46, and that during said time said firm paid plaintiff $621.80, $513.24 in excess of the indebtedness incurred by said firm during said time, and he prayed for judgment for one-half of such excess. He further alleged that plaintiff induced him to transfer and assign to it notes and accounts due said firm of McCan & Co. aggregating a sum more than $900 through the false and fraudulent representations made by plaintiff through its president and general manager, that the said firm of J. L. McCan was hopelessly in debt to plaintiff and divers other creditors, and that thereafter plaintiff sold said notes and accounts to J. L. McCan for $300, and that plaintiff converted the proceeds of said sale to its own use and benefit; and he prayed for judgment over against plaintiff for $500, which he alleged was the actual cash value of his interest in said notes and accounts.

Plaintiff filed a supplemental petition, in which he denied the allegations of defendants' cross-bills.

A trial of the case before a jury resulted in a verdict and judgment in favor of defendant Marshall on his cross-action for $140.01, and in favor of defendant Sammon on his cross-action for $256.60, and denying any recovery in favor of plaintiff, and from this judgment the plaintiff has appealed. No briefs have been filed in behalf of the appellees.

The facts adduced upon the trial, as well as we can understand them from a careful reading of the statement of facts, are as follows: J. L. McCan was engaged in the mercantile business in the town of Oakwoods, and while so engaged bought goods, wares, and merchandise on credit from the plaintiff Moore Grocery Company of Tyler. On the 20th day of September, 1911, McCan's indebtedness to plaintiff was in the neighborhood of $1,000. On the day mentioned defendant Marshall bought a half interest in McCan's business, and the firm's name was then chang-

ed to **J. L. McCan & Co.** After this J. L. Mc-Can & Co. purchased goods, wares, and merchandise from plaintiff, on credit, amounting to $1,064.53. About March 12, 1912, defendant Sammon purchased Marshall's half interest in the business taking Marshall's place in the firm, and assuming all indebtedness due by the firm.

Plaintiff admitted payments by McCan and Marshall at various times and in various sums, amounting to $558.87, leaving a balance due it, as it claimed, of $455.66. Some time after the business of McCan and Sammon had been running, they turned over their entire stock of goods, wares, and merchandise, and all notes and accounts due the firm to plaintiff for the benefit of all their creditors, including plaintiff. McCan directed plaintiff to apply his half interest in the assets of the firm to the payment of his individual debt to plaintiff, which accrued before Marshall bought an interest in the business. Plaintiff through its president sold the notes and accounts to McCan for $300, and also sold the stock of goods, but the price received therefor is not shown, further than that with the proceeds of the sale of the goods and notes and accounts the plaintiff discharged $400 of the individual indebtedness due to it by McCan. It was not shown that any of the proceeds were applied to the payment of the debts of the general creditors of McCan and Sammon. It is shown by a letter written by plaintiff to McCan on November 15, 1912, that plaintiff canceled and returned to him four notes which were paid out of his half interest in the business. These notes as shown by other testimony were for $100 each.

This is the best analysis we can make of the evidence. As presented to us in the statement of facts, it is unsatisfactory and confusing, and appellees have not seen fit to aid us with briefs.

We will not discuss appellant's assignments of error in detail.

According to appellant's testimony, the firm composed of McCan and Marshall owed it a balance of $455.66 at the time Sammon bought Marshall's interest and assumed the indebtedness of the firm. Nothing was paid upon this indebtedness until McCan and Sammon turned their stock of goods, notes and accounts over to appellant to be applied generally to the payment of their debts. McCan had no right to direct, nor had the appellant the right to apply, McCan's half interest to the payment of his individual debt to the exclusion of the firm's creditors as was attempted to be done. If we assume that the $400 applied by appellant was one-half of the proceeds of the sale of the goods, notes, and accounts, then the whole must have sold for $800. If so, then the $400 applied by appellant on the individual debt of McCan should be applied to the payment of the firm's debt and discharge it pro tanto. This would leave the firm still owing $55.66. If

the balance of the proceeds of the sale were applied to the payment of general creditors, then whether the pro rata received by appellant was sufficient or more than sufficient to discharge this balance would depend on the amount of other indebtedness the firm owed. It may have been considerably more than sufficient, but on this point the evidence does not enlighten us. It is clear, however, that the verdict rendered in favor of the defendants on their cross-action was not warranted by the evidence as presented to us in the statement of facts, and must have been the result of guess or speculation. Certainly there is no substantial basis therefor in the testimony, and we cannot permit a judgment based thereon to stand.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.